**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br>**v.**<br>**JOSE GOMEZ QUIROZ,**<br>**Defendant.** | **No. P:22-CR-00104-DC** |

# GOVERNMENT'S MOTION FOR DETENTION PENDING APPEAL OR TO STAY DISMISSAL PENDING APPEAL

## TABLE OF CONTENTS


Table of Contents ............ ii

Introduction ............ 1

Statement of the Case ............ 2

I. Factual background ............ 2

II. Procedural history ............ 2

A. Indictment and detention ............ 2

B. Guilty verdict ............ 3

C. Order dismissing Quiroz's indictment ............ 3

Argument ............ 4

I. This Court should detain Quiroz under 18 U.S.C. §§ 3142, 3143(c) pending the government's appeal. ............ 4

A. Quiroz remains subject to this Court's original detention order. ............ 4

B. Quiroz remains a danger and a flight risk. ............ 6

C. Dismissal of Quiroz's indictment does not automatically trigger his release. ............ 6

II. Alternatively, this Court should stay dismissal of Quiroz's indictment pending the government's appeal. ............ 8

A. The government shows a sufficient likelihood of success on the merits. ............ 9

B. Irreparable harm will result absent a stay. ............ 12

C. No harm to Quiroz or the public interest weighs against a stay. ............ 12

Conclusion ............ 14

Certificate of Conference ............ 15

Certificate of Service ............ 15

## INTRODUCTION

This case raises a constitutional question that has divided federal courts: under the framework announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), does the federal criminal prohibition of receiving a firearm while under felony indictment, 18 U.S.C. § 922(n), violates the Second Amendment? In dismissing Quiroz's indictment, this Court became the first in the nation to hold that § 922(n)—or any other federal criminal law for that matter—violates the Second Amendment under the *Bruen* framework. The only other court to consider a *Bruen* challenge to § 922(n) upheld the statute. *See United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022). The same question is now before the Fifth Circuit in a case tentatively calendared for argument the week of December 5, 2022. *See* Tentative Calendar Notice, *United States v. Avila*, No. 22-50088 (5th Cir. Sept. 14, 2022), ECF No. 516471616. The government anticipates that the Fifth Circuit's decision in *Avila* will ultimately control here.

The government has exercised its right under 18 U.S.C. § 3731 to appeal this Court's dismissal order and now asks this Court to preserve the status quo pending the appeal. First, the government asks that this Court order Quiroz detained pending the appeal. When, as here, the government appeals a dismissal order under § 3731, the defendant's detention or release continues to be governed by § 3142, just as it was while the defendant was awaiting trial. And when, as here, the defendant is already "subject to a … detention order," that detention order still applies during the government's appeal. 18 U.S.C. § 3143(c). Regardless of the existing order, moreover, the § 3142 factors continue to support Quiroz's detention because he remains a danger to the community and a flight risk. Thus, this Court should exercise its statutory power to keep Quiroz detained pending the government's appeal.

Second, and in the alternative, the government asks this Court to stay its dismissal order pending the government's appeal. Both the All Writs Act and this Court's inherent authority give it power to stay its orders pending appeal. And all the relevant factors favor a stay here. Given the weight of post-*Bruen* authority on the constitutionality of federal guns crimes, the government

shows a sufficient likelihood of success on the merits to support a stay. The government would also suffer irreparable harm absent a stay given the flight risk and danger Quiroz would pose if released. And a stay would do Quiroz no undue harm, especially since a decision in *Avila* will likely bring a swift conclusion to the appellate proceedings in this case and therefore minimize the time Quiroz is detained pending appeal. Thus, this Court should exercise its discretionary power to stay its dismissal order pending the government's appeal.

## Statement of the Case

### I. Factual background

Quiroz was indicted in Texas state court for burglary, a second-degree felony. (ECF No. 39 at 1.) *See* Tex. Penal Code § 30.02(c)(2). He pled not guilty and was released on bond. (*Id.*) After he failed to appear for a hearing in his burglary case, he was also indicted for bail jumping/failure to appear, a third-degree felony. (*Id.* at 2) *See* Tex. Penal Code § 38.10(f).

While the state burglary and bail-jumping indictments were pending, Quiroz tried to buy a handgun from a hardware store. (*Id.*) He filled out an ATF Form 4473, on which he denied that he was under felony indictment. (*Id.*) The National Instant Criminal Background Check System (NICS) returned a delayed response, which meant that the store could not give Quiroz the gun until either the background check cleared or seven days passed. (*Id.*) Seven days passed, and so Quiroz picked the gun up from the store. (*Id.*)

The next month, NICS denied the purchase and told the ATF that Quiroz had illegally bought the gun. (*Id.*)

### II. Procedural history

#### A. Indictment and detention

Quiroz was charged in a two-count federal indictment. (ECF. No. 1.) Count one charged that he falsely stated on the Form 4473 that he was not under felony indictment. (*Id.* at 1–2.) *See* 18 U.S.C. §§ 922(a)(6), 924(a)(2). Count two charged that he knowingly received a firearm while under felony indictment. (*Id.* at 2.) *See* 18 U.S.C. §§ 922(n), 924(a)(1)(D).

Quiroz appeared before Magistrate Judge Fannin for a detention hearing. (ECF No. 12.) Judge Fannin found that Quiroz posed both a danger to the community and a flight risk and thus ordered him detained pending trial. (ECF No. 13 at 1.) He observed that "[t]he evidence and punishment range against [Quiroz] is substantial." (*Id.*) He also noted that Quiroz was unemployed, had a history of substance abuse, had a history of failing to appear, and had other pending charges. (*Id.*) Judge Fannin attached a copy of Quiroz's substantial criminal history, which includes numerous assaults, DUIs, and controlled-substance crimes, along with charges of bail jumping and failure to appear. (*Id.* at 3–4.)

**B. Guilty verdict**

Quiroz went to trial (ECF No. 67), and the jury convicted him of both counts (ECF No. 71).

**C. Order dismissing Quiroz's indictment**

Before trial, Quiroz moved to dismiss the indictment. (ECF No. 23.) He claimed that § 922(n)—the crime charged in count two—violates the Second Amendment. (*Id.* at 3–14.) He also claimed that because Congress could not constitutionally prohibit those under felony indictment from receiving firearms, he could not be convicted of falsely denying that he was under felony indictment on the Form 4473, as count one charged. (*Id.* at 14.) Applying the Fifth Circuit's pre-*Bruen* Second Amendment standard, This Court denied Quiroz's motion. (ECF No. 39 at 6–7 (citing *Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 700 F.3d 185, 194 (5th Cir. 2012)).)

After the verdict, Quiroz moved for judgment of acquittal and for reconsideration of his dismissal motion, renewing his Second Amendment challenge to § 922(n). (ECF No. 74.) He relied on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which the Supreme Court decided on the same day as the verdict in this case. Quiroz noted that *Bruen* announced a "new framework" for Second Amendment challenges that partly displaces the Fifth Circuit's pre-*Bruen* test. (*Id.* at 3.) And he argued that under the new framework, § 922(n) violates the Second Amendment. (*Id.* at 4.)

This Court granted reconsideration and dismissed Quiroz's indictment. (ECF No. 82.) It first ruled that § 922(n) burdens conduct covered by the Second Amendment because the amendment's plain text covers "receiving" a firearm. (*Id.* at 5–7.) It then concluded that, under *Bruen*'s "historical analysis," § 922(n) violates the Second Amendment because it is not sufficiently analogous to any longstanding historical regulation. (*Id.* at 8–20.)

The government timely noticed an appeal of this Court's dismissal order. (ECF No. 83.) *See* Fed. R. App. P. 4(b)(1)(B)(1).

## ARGUMENT

### I. This Court should detain Quiroz under 18 U.S.C. §§ 3142, 3143(c) pending the government's appeal.

This Court should order Quiroz detained pending the government's appeal of this Court's dismissal order. Under 18 U.S.C. § 3143(c), when the government exercises its right to appeal the dismissal of an indictment under § 3731, § 3142 continues to govern the defendant's release or detention just as it did before the dismissal order. More to the point, when the defendant has already been ordered detained, the existing detention order requires that the defendant remain detained pending the appeal. Section 3142's framework also continues to require detention here because Quiroz remains a danger and a flight risk.

#### A. Quiroz remains subject to this Court's original detention order.

Because Quiroz is currently detained, he should remain detained pending the government's appeal. The government's appeal lies under 18 U.S.C. § 3731, which authorizes a government appeal from an "order of a district court dismissing an indictment."

In turn, the Bail Reform Act provides that when the government appeals under § 3731, the court "shall" treat the defendant "in accordance with section 3142 of this title, unless the defendant is otherwise subject to a release or detention order." 18 U.S.C. § 3143(c). So the same considerations—those set forth in § 3142—govern release or detention during the government's appeal as govern during pretrial proceedings. *See United States v. Davis*, 793 F.3d 712, 729 n.5 (7th Cir. 2015) ("For purposes of pretrial release, when the government takes an appeal pursuant to

section 3731, 18 U.S.C. § 3143(c) requires the district court to treat the defendant as if the case were still active and apply the criteria set forth in 18 U.S.C. § 3142."); *United States v. Workman*, 680 F. App'x 699, 701–02 (10th Cir. 2017) ("Where the government takes an appeal from a suppression order [which also lies under § 3731], we generally treat the defendant as we would a pretrial defendant.").

When the defendant was previously ordered detained pending trial, § 3143(c) thus preserves the status quo pending the government's appeal. The requirement that a court analyze the § 3142 factors "*unless* the defendant is otherwise subject to a release or detention order" means that if a court has already entered a detention order under § 3142, that order still applies during the appeal.

The statute's structure confirms that interpretation. The terms "release order" and "detention order" are defined in § 3142 itself. A "release order" must set forth the conditions of release and the consequences of violating those terms. 18 U.S.C. § 3142(h). A "detention order" must include written findings of fact and a statement of the reasons for detention. 18 U.S.C. § 3142(i). If a court has considered the § 3142 factors and entered a detention order, there is no need to repeat the analysis when the government appeals from an order dismissing an indictment. The defendant must remain detained until the appeal is resolved. 18 U.S.C. § 3143(c).

That is the status of this case. The magistrate judge entered an "order of detention pending trial" on March 24, 2022, after conducting the analysis required by § 3142. (ECF No. 13.) It found that "[t]here [was] clear and convincing evidence that [Quiroz] is a danger to the community as well as a preponderance of evidence which indicates that [Quiroz] is a flight risk." (*Id.* at 1.) The magistrate judge listed the reasons supporting those findings, attached a summary of Quiroz's criminal history, and otherwise complied with § 3142(i)'s requirements for a "detention order." (*Id.* at 1–3.) Although this Court has entered an order dismissing the indictment, the government exercised its right to appeal from that order under § 3731. (ECF No. 83.) Consistent with the plain text of § 3143(c), this Court should enter an order continuing [Quiroz's] detention pending the government's appeal.

**B. Quiroz remains a danger and a flight risk.**

Although the existing detention order alone requires continuing Quiroz's detention pending the government's appeal, so does treating Quiroz "in accordance with section 3142 of this title" and re-applying that section's framework. Under § 3142(e)(1), a court "shall" order a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." A court "shall" consider several factors in deciding whether detention is warranted, including (1) the nature and circumstances of the charged crime; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant would pose to others and to the community if released. 18 U.S.C. § 3142(g).

An analysis of those factors shows that Quiroz remains both a flight risk and a danger to others. The nature and circumstances of the charged crime, which he was convicted of by a jury, shows Quiroz will knowingly and willingly violate the law. No condition set by this Court will *reasonably assure* Quiroz's appearance because he has demonstrated his willingness to violate state and federal statutes already. The weight of the evidence against Quiroz is insurmountable. The evidence was so glaringly obvious that the jury returned a verdict shortly after beginning their deliberations. The evidence clearly shows Quiroz knew he was under two felony indictments for burglary of habitation and bail-jumping. So not only has Quiroz shown he will willingly violate the law, but he has shown that he will violate court-imposed conditions while on bond while awaiting a court date. Quiroz has an extensive criminal history that spans the last twenty-five years; a criminal history ranging from petty misdemeanors to the felony charges he is under indictment for in this case. Quiroz's lack of respect to the rule of law and his choice to willingly violate state and federal statutes highlights the danger he poses to others and to the community if he is immediately released.

**C. Dismissal of Quiroz's indictment does not automatically trigger his release.**

Given that § 3143(c) expressly permits continued detention pending an appeal by the government under § 3731—the exact scenario here—the fact that Quiroz's indictment was ordered

dismissed does not preclude his continued detention. Pending the government's appeal, a court must simply continue the existing "detention order" or, if necessary, "treat" the defendant the same way it treats all defendants pending trial by analyzing release or detention "in accordance with section 3142." 18 U.S.C. § 3143(c). The plain text is confirmed by legislative history. "Use of the term 'treated,'" Congress explained, "removes an ambiguity in the current statute and makes it clear that the judicial officer may release or detain the defendant as provided in section 3142." S. Rep. No. 98-225, at 27 (1983). "In such cases, the defendant, of course, would not have been convicted, and he thus should be treated in the same manner as a person who has not yet stood trial[.]" *Id.*

That is consistent with 18 U.S.C. § 3731, which was amended in 1986 to *delete* a provision that had formerly required a defendant's release pending a government appeal. *See* Pub. L. No. 99-646, 100 Stat. 3592, Sec. 32 (1986) (striking out fifth paragraph of § 3731). It is also consistent with cases continuing a defendant's detention pending the government's appeal even when the defendant completed his sentence, *see, e.g.*, *United States v. Maul-Valverde*, 10 F.3d 544, 547 & n.2 (8th Cir. 1993), or was granted a judgment of acquittal, *see, e.g.*, *United States v. Woodruff*, 941 F. Supp. 910, 930 (N.D. Cal. 1996), *acquittal rev'd*, 122 F.3d 1185 (9th Cir. 1997).

Still, some district courts have ruled that the dismissal of all counts precludes detention because "there is no longer an operative indictment." *United States v. Arteaga-Centeno*, 360 F. Supp. 3d 1022, 1024 (N.D. Cal. 2019); *see also United States v. Hudson*, 3 F. Supp. 3d 772, 789 (C.D. Cal. 2014), *rev'd sub nom*, *United States v. Dunlap*, 593 F. App'x 619 (9th Cir. 2014); *United States v. Sales*, No. 2:13–cr–00137–NT, 2014 WL 3728364 (D. Me. Jul. 25, 2014). Those decisions not only contravene the plain statutory text but are also legally incorrect. Just as a conviction does not become final until it is affirmed on appeal (or the time for appeal expires), *see United States v. Morgan*, 845 F.3d 664, 666 n.1 (5th Cir. 2017) (citing *Clay v. United States*, 537 U.S. 522, 527 (2003)), the dismissal of an indictment should not be deemed final until it is affirmed on appeal

(or the time for appeal expires). That is why a district court is empowered either to continue a defendant on bail pending appeal or to continue a defendant's detention pending appeal.[1]

The logic of that two-sided coin is reinforced by the statutes permitting reindictment of dismissed charges. When a felony indictment or information is dismissed, the government typically can reindict within six months of the dismissal "or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final." 18 U.S.C. §§ 3288, 3289 (emphasis added). That rule confirms that a dismissal does not become final until after appeal. Here, the government filed its notice of appeal, and the indictment remains operative until the appeal is resolved. Quiroz's continued detention is permissible, and warranted, under § 3143(c).

## II. Alternatively, this Court should stay dismissal of Quiroz's indictment pending the government's appeal.

But if this Court holds that dismissal of the indictment precludes continued detention under § 3143(c), it should stay its dismissal order pending the government's appeal. Courts have the power to stay their orders pending appeal under both the All Writs Act, 28 U.S.C. § 1651; *see Lawrence v. Chater*, 516 U.S. 163, 168 (1996), and their inherent authority, *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936). That power includes the power to stay the dismissal of an indictment pending the government's appeal under § 3731. *See, e.g.*, *United States v. Alfonso*, 143 F.3d 772, 775 (2d Cir. 1998) (noting that a release order following the dismissal of an indictment had been stayed pending the government's appeal of the dismissal); *United States v. Armstrong*, 48 F.3d 1508, 1512 (9th Cir. 1995) (noting that the dismissal of indictments had been stayed pending the government's appeal), *rev'd on other grounds*, 517 U.S. 456 (1996).

Whether to grant a stay pending appeal is committed to the Court's discretion. *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 228 (5th Cir. 2020). Courts consider four factors in determining whether to grant a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

[1] The government's right to appeal under § 3731 is not conditioned on "finality." *See United States v. Davis*, 793 F.3d 712, 717 (7th Cir. 2015) (en banc).

> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). This Court should exercise its discretion to grant a stay here because the government shows a sufficient likelihood of success, irreparable harm would result absent a stay, and the other relevant factors likewise favor a stay.

**A. The government shows a sufficient likelihood of success on the merits.**

The "strong showing" needed for the first factor to favor a stay requires more than "a 'mere possibility of relief'" but does not require certainty that the government will prevail on appeal. *See Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 300 (5th Cir. 2017) (quoting *Nken*, 556 U.S. at 434). The government shows more than a mere possibility of relief here.

Although this Court disagreed with the government's argument that § 922(n) is constitutional, the only other court to reach that question post-*Bruen* held otherwise. *United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022). In *Kays*, the court "decline[d] to hold that § 922(n) violates the Second Amendment." *Id.* at *5. Like this Court, the *Kays* court observed that "historical support for excluding those under indictment from the protections of the Second Amendment is limited—the first federal statute restricting an indicted individual's access to firearms was not enacted until 1938." *Id.* at *4. Still, the court found "that the surety laws discussed in *Bruen* are proper historical analogues for § 922(n)." *Id.* at *5. (*See* ECF No. 77 at 16–17 (government's brief in this case arguing that the surety laws supply a relevantly similar historical analog).) The court explained that, like § 922(n), the surety laws did not apply to "every citizen" but only to those credibly accused of posing a danger. *Id.* at *4. Also like § 922(n), the surety laws imposed only a temporary restriction. *Id.* "Even so," the court continued, § 922(n) imposes an arguably narrower restriction than the surety laws because it does not restrict a person's right to publicly carry a gun but "simply limits [his] right to receive a firearm during the pendency of an indictment." *Id.* at *5.

More broadly, this Court's dismissal order parts with the otherwise unanimous and growing consensus of federal courts that have considered post-*Bruen* Second Amendment challenges to federal criminal statutes. In every other such case, the court upheld the statute. *See United States* v. *Perez-Garcia*, No. 22-CR-1581 (S.D. Cal. Sept. 19, 2022) (ECF No. 41) (disarmament as a condition of pretrial release under 18 U.S.C. § 3142); *United States v. Cockerham*, No. 5:21-CR-6-DCB-FKB, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022) (§ 922(g)(1)); *United States v. Jackson*, No. CR 21-51 (DWF/TNL), 2022 WL 4226229 (D. Minn. Sept. 13, 2022) (§ 922(g)(1)); Order Denying Mot. to Dism., *United States v. Doty*, No. 5:21-CR-21-JPB-JPM (N.D. W. Va. Sept. 9, 2022), ECF No. 34 (§ 922(g)(1)); *United States v. Burrell*, No. 21-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) (§ 922(g)(1)); Order Regarding Mot. to Dism., *United States v. Smith*, No. 3:16-CR-86-SLG-1 (D. Alaska Sept. 6, 2022), ECF No. 1272 (§ 924(c)); *United States v. Tilotta*, No. 3:19-CR-4768-GPC, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) (§§ 922(a)(1)(A) and 923(a); 924(a)(1)(A)); *Kays*, No. 2022 WL 3718519 (§§ 922(g)(8) and 922(n)); *United States v. Nutter*, No. 2:21-CR-00142, 2022 WL 3718518 (S.D. W. Va. Aug. 29, 2022) (§ 922(g)(9)); *United States v. Jackson*, No. CR-22-59-D, 2022 WL 3582504 (W.D. Okla. Aug. 19, 2022) (§ 922(g)(9)); Order Denying Mot. to Dism., *United States v. Nevens*, No. CR 19-774-DMG (C.D.C.A. Aug. 15, 2022), ECF No. 121 (§§ 922(g)(1) and 924(c)); Order re: Mot. to Withdraw Guilty Plea and Dismiss the Indictment, *United States v. Ramos*, No. CR 21-395-RGK (C.D.C.A. Aug. 15, 2022), ECF No. 31 (§ 922(g)(1)); *United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350 (D.S.C. Aug. 25, 2022) (§§ 922(g)(1) and 924(c)); *United States v. Daniels*, No. 1:22-CR-58-LG-RHWR-1, 2022 WL 2654232 (S.D. Miss. July 8, 2022) (§ 922(g)(3)).

Those decisions square with the Supreme Court's repeated assurances that it did not intend to upset longstanding gun regulations, including federal criminal prohibitions with identical historical roots to § 922(n). In *Heller*, the Court explained that its analysis cast no doubt "on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *District of*

*Columbia v. Heller*, 554 U.S. 570, 626–27 (2008). In *McDonald*, the Court repeated *Heller*'s "assurances" that it "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (cleaned up); *see also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (explaining that the Court's decision "does not expand the categories of people who may lawfully possess a gun"); *id.* at 2162 (Kavanaugh, J., concurring) (reiterating *Heller*'s statements). Although this Court downplayed these assurances as dicta, lower courts "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (quotation marks omitted).

In addition, as the government has observed (ECF No. 77 at 16), *Bruen* expressly endorsed "43 States' 'shall-issue' licensing regimes," *Bruen*, 142 S. Ct. at 2138 n.9, many of which operate similarly to § 922(n) by denying licenses—and thus the right to carry guns for self-defense—to those under indictment. *See also id.* at 2161 (Kavanaugh, J. concurring) ("[T]he Court's decision does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 states."). The Court's endorsement of shall-issue licensing regimes supplies another strong signal that the Court would not deem § 922(n) inconsistent with the Second Amendment. But this Court's order did not address the government's argument about *Bruen*'s endorsement of shall-issue regimes.

In sum, although this Court ruled that § 922(n) violates the Second Amendment, that question has divided federal courts, and the overwhelming weight of federal authority upholds federal criminal statutes against *Bruen* challenges. Under these circumstances, the likelihood of government success on appeal supports a stay.

**B. Irreparable harm will result absent a stay.**

The government likely will be irreparably harmed absent a stay. Here again, the stay standard does not require certainty, just more than "some possibility of irreparable injury." *See Nken*, 556 U.S. at 434.

To start, if the dismissal order results in Quiroz's release and he is never found again, the government will have irreparably lost its ability to prosecute him. That concern is real. The magistrate judge found that Quiroz is a flight risk. Based on his criminal history and his exposure to up to five years' imprisonment if convicted, *see* 18 U.S.C. §§ 922(n), 924(a)(1)(D), there is a meaningful possibility that he will disappear if given the chance. Quiroz has already shown that he can and will knowingly violate court-imposed conditions if he is released. In fact, during the investigation of the instant case there is evidence that he knew federal agents were looking for him. Quiroz actively avoided the agents even when his own mother notified him that the agents wanted to speak with him. Were the government to succeed on appeal, Quiroz's incentive to flee would be even greater, and even standing alone, the investigative costs in trying to locate him would constitute irreparable harm to the government.

Beyond that, the government's interest in protecting the community would be irreparably harmed if Quiroz were released and reoffended while the government's appeal is pending. As stated above, Quiroz has an extensive criminal history that shows his contempt for this country's rule of law. This was not a minor law he chose to violate. Quiroz willingly lied on federal documents in order to purchase a deadly weapon. The seriousness of the crime and the possible repercussions of what Quiroz chose to do must be considered

**C. No harm to Quiroz or the public interest weighs against a stay.**

The last two *Nken* factors are less important than the first two. *See E.T.*, 19 F.4th at 764. They do not weigh against a stay here.

A stay of the order of dismissal pending appeal will not substantially injure Quiroz. "[I]n considering whether issuance of a stay pending appeal will substantially injure the other party, the maintenance of the status quo is an important consideration in granting a stay." *Id.* at 770 (quotation

marks omitted). While every order of pretrial detention may constitute "injury," the Bail Reform Act makes clear that the injury is not augmented by preserving the status quo while the government appeals from a district court order dismissing the indictment. That is because Quiroz must be treated in the same manner as all defendants who have not yet been convicted—release or detention is governed by § 3142. 18 U.S.C. § 3143(c). That approach serves the community-protection and flight-avoidance concerns that justify detention in the first place. When the government pursues its right to appeal, "[t]he issuance of a stay does not irreparably injure [the defendant] because he is not entitled to immediate release." *See Haggard v. Curry*, 631 F.3d 931, 938 (9th Cir. 2010). The burden on Quiroz is minimized here: *Avila* is already almost fully briefed in the Fifth Circuit and is tentatively calendared for argument the first week of December 2022. Since the government expects the Fifth Circuit's *Avila* decision to control the outcome here too, it expects this appeal to conclude expeditiously once *Avila* is decided.

Any harm to Quiroz, moreover, is outweighed by the public interest in a stay. When the government appeals, its "interest and harm merge with that of the public." *See E.T.*, 19 F.4th at 770. Like the government, the public has a strong interest in mitigating the risk of flight and thus preserving the ability to prosecute Quiroz. The public also has a strong interest in keeping dangerous offenders like Quiroz off the streets pending appellate review. Those are recognized factors weighing in favor of a stay. S*ee Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (reversing lower court's order releasing successful habeas petitioner pending appeal and agreeing that "the possibility of flight," the inmate's "danger to the public if released," and the "State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal" were all factors "to be considered").

The record establishes that Quiroz is a flight risk and a danger to the community, as evidenced not only by his criminal history but also by the crimes with which he is charged here. The evidence clearly shows Quiroz knew he was under two indictments for burglary of habitation and felony bail-jumping. So not only has Quiroz shown he will willingly violate the law, but he has shown that he will violate court-imposed conditions should he be released on bond. Quiroz's

extensive criminal history spans the past twenty-five years; a criminal history ranging from petty misdemeanors to the felony charges he is under indictment for in this case. Quiroz's lack of respect to the rule of law and his choice to willingly violate state and federal statutes highlights the danger he poses to others and to the community if he is immediately released.

## CONCLUSION

This Court should order Quiroz detained pending the government's appeal of this Court's order dismissing the indictment. Alternatively, this Court should stay its dismissal order pending the government's appeal.

Respectfully submitted,

Ashley C. Hoff
United States Attorney

*/s/ Matthew Ellis*

Matthew Ellis (N.C. Bar No. 56788)
Assistant United States Attorney
2500 North Highway 118, Suite A200
Alpine, Texas 79830
(432) 538-6100 (phone)

## Certificate of Conference

I hereby certify that on September 21, 2022, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the parties of record.

*/s/ Matthew Ellis*
Matthew Ellis
Assistant United States Attorney

## Certificate of Service

I certify that on September 21, 2022, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will serve all parties of record.

*/s/ Matthew Ellis*
Matthew Ellis
Assistant United States Attorney