**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **4:22-CR-00104-DC** |
| | § | |
| | § | |
| **JOSE GOMEZ QUIROZ** | § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION**
**PENDING APPEAL OR TO STAY DISMISSAL PENDING APPEAL**

TO THE HONORABLE DAVID COUNTS, DISTRICT JUDGE OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF TEXAS:

On June 19, 2022, this Court dismissed Jose Gomez Quiroz's Indictment, because it found

that 18 U.S.C. § 922(n) violates the Second Amendment under the framework announced by *New*

*York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Doc. No. 82. Since that

time, Mr. Quiroz has been unlawfully detained. Despite this Court's Order, the Government now

insists that he be detained while it pursues an appeal of this Court's Order. *See* Doc. No. 86.

Without an Indictment, there is no authority to detain Mr. Quiroz.

The Government proffers several troubling and unconvincing arguments. First, it argues

this Court's dismissal of the Indictment has no bearing on the detention order, and the Court is

required to keep Mr. Quiroz detained. But courts have consistently held the precise opposite: that

there is no authority to detain a person after dismissal of an indictment. Second, the Government

argues that the same factors that supported Mr. Quiroz's pretrial detention support his detention

now. The Government, however, ignores the significance of the dismissal of this case as well as

the amount of time that Mr. Quiroz has already been detained. And third, the Government argues

that the Court should, in the alternative, stay its dismissal, in part because the Government is likely

to succeed on appeal and Mr. Quiroz is not harmed by remaining unlawfully detained during that time. This Court, however, likely no longer has jurisdiction to stay the order. Moreover, the Government cannot show a likelihood of success on the merits because it is simply wrong about the application of *Bruen*, and its arguments of competing injuries are without merit.

The Court should deny the Government's motion on the merits and order that Mr. Quiroz be released immediately pending the motion's resolution. There is no charge currently serving as the basis for his detention.

## I.      BACKGROUND

On March 10, 2022, the Grand Jury returned an Indictment charging Mr. Quiroz with one count of willfully receiving a firearm while he was under indictment for a crime punishable by imprisonment for a term exceeding one year, pursuant to 18 U.S.C. § 922(n), 924(a)(1)(D), and one count of knowingly making a false statement intended to deceive a dealer with respect to any fact material to the lawfulness of the sale of the firearm, pursuant to 18 U.S.C. 922(a)(6). *See* Doc. No. 1. Mr. Quiroz was under indictment in Pecos County, Texas, for burglary and failure to appear. *See* Doc. Nos. 23-1, 23-2. While under indictment, he purchased a firearm and indicated on a form that he was not under felony indictment at the time. *See* Doc. Nos. 23-3, 23-4. He was arrested on March 17, 2022, and the Court ordered that Mr. Quiroz be detained without bond on March 24, 2022. Doc. Nos. 6, 12.

On April 27, 2022, Mr. Quiroz moved to dismiss both counts. Doc. No. 23. He argued that § 922(n) violated the Second Amendment as well as his Due Process Rights. He further explained that his § 922(a)(6) charge should be dismissed because the alleged false statement about his not being under indictment would be immaterial if the Court found that § 922(n) is unconstitutional. On June 9, 2022, the Court denied Mr. Quiroz's motion. *See* Doc. No. 39.

On June 23, 2022, a jury convicted Mr. Quiroz of both counts. Doc. No. 71. On the same day, the Supreme Court announced its opinion *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In *Bruen*, the Supreme Court rejected the two-step framework previously employed by courts in the Fifth Circuit, including this Court, for Second Amendment challenges, in favor of a simpler formulation. Under the new test, a court need only conduct the first step of the prior framework—i.e., whether the plain text of the Second Amendment protects the conduct at issue, and whether the Government has demonstrated the regulation is consistent with the historical traditions of the United States. *See id*. at 2129-30.

On June 30, 2022, Mr. Quiroz, moved this Court for post-verdict judgement of acquittal or to reconsider its prior denial of his motion to dismiss (the "Motion to Reconsider"), in light of the *Bruen* decision. Doc. No. 73. The Motion to Reconsider was the subject of considerable briefing by the parties. The Government filed a Response on July 25, 2022, and Mr. Quiroz Replied on August 1, 2022. Doc. Nos. 77, 78. The Government also filed a Supplemental Response, alerting the Court to a development in the caselaw, to which Mr. Quiroz promptly responded. Doc. Nos. 79, 80.

On September 19, 2022, the Court granted Mr. Quiroz's Motion to Reconsider, and dismissed the Indictment in this case (the "Dismissal Order"). Doc. No. 82. In a lengthy and thorough opinion, the Court correctly applied the *Bruen* framework and concluded: 1) receipt of a firearm under § 922(n) is protected by the plain text of the Second Amendment, and 2) § 922(n) is not consistent with the Nation's historical firearms restrictions. *See id*. The same day, the Government filed a Notice of Appeal. Doc. No. 83.

Despite the absence of any pending charges against him, Mr. Quiroz has not been released from custody. Two days after the dismissal, the Government filed a motion arguing that Mr. Quiroz

should be detained pending appeal or, in the alternative, that the dismissal order should be stayed pending its appeal (the "Motion to Detain"). Doc. No. 85.

## II.      ARGUMENT

The Government argues primarily that the dismissal of an indictment has no impact on a pretrial detention order and an appeal mandates continued detention. *See* Doc. No. 86 at 4-8. It is wrong. None of the cases cited by the Government hold that a pretrial detention order remains in place after a criminal defendant's indictment is dismissed. Such a rule would raise serious due process concerns, chill efforts to vindicate constitutional rights, and be ripe for abuse. The Government would, as it does here, insist that those acquitted of crimes or who have had all charges dismissed, be automatically detained indefinitely. The position is inconsistent with the law, basic legal principles, and common sense. In fact, the courts to consider this question have held that, after dismissal of an indictment, there is no longer authority to detain a person at all.  The Government also fails to sufficiently explain how considerations under 18 U.S.C. § 3142 support Mr. Quiroz's continued detention, particularly beyond any likely sentence he could have received.

The Government argues, in the alternative, that this Court should stay the dismissal of Mr. Quiroz's Indictment pending appeal. The Government ignores jurisdictional and other obstacles to such a request. Moreover, it fails to meet its considerable burden to obtain such extraordinary relief. The Government insists that it is likely to succeed in getting this Court's Order reversed, despite the Government's misunderstanding of the law after *Bruen*. Its legal argument is effectively that every federal firearm law is the same and every category of person identified by those laws is the same. So, because other courts have found the felon-in-possession statute constitutional, the Fifth Circuit will clearly reverse this Court and find § 922(n) constitutional. As this Court has repeatedly told the Government, people under indictment are not felons, and *Bruen*

requires more than simply saying that if § 922(g)(1) is constitutional, so is § 922(n). The Government's unconvincing arguments undermine the likelihood of its success in appealing this case.

The Government also argues that it will be irreparably harmed if Mr. Quiroz is released, despite his having already been detained for over six months for an unconstitutional charge. This period of incarceration is close to the sentence Mr. Quiroz would receive under the Sentencing Guidelines and will likely exceed that amount while the Government pursues this appeal. Finally, the Government claims Mr. Quiroz will not be harmed by continued detention, because he is no different from any criminal defendant awaiting trial. The position evinces an indifference towards a criminal defendant, and also misunderstands that a person whose Indictment is dismissed is fundamentally different from one who is still facing charges.

**A. Mr. Quiroz is Currently Unlawfully Detained and Should Not be Further Detained Pending Appeal.**

1.  <u>There is no authority to detain Mr. Quiroz following the dismissal of his Indictment.</u>

The Government first argues that this Court's dismissal of the indictment has no impact on Mr. Quiroz's pretrial detention order. In fact, the opposite is true. This Court's Dismissal Order vacated the pretrial detention order, and, in the absence of a criminal charge, there is no more authority to detain Mr. Quiroz.

Section 3143(c) provides that the Court "shall treat a defendant in a case in which an appeal has been taken by the United States under section 3731 of this title, in accordance with section 3142 of this title, unless the defendant is otherwise subject to a release or detention order." In cases where the defendant has not been sentenced to a term of imprisonment, the Court is directed to "release or detain the person under section 3142." *Id*. Section 3142 provides the ordinary procedures for pretrial release or detention of a "person charged with an offense[.]"

The Government, citing to § 3143(c), does not just argue that the Court should consider the merits of detention and assess whether Mr. Quiroz should remain detained; it argues that this Court is *required* to keep Mr. Quiroz detained, because the existing detention order was undisturbed by the dismissal of Mr. Quiroz's Indictment.[1] It posits, without citation, that even after dismissal of an entire indictment, "when the defendant has already been ordered detained, the existing detention order requires that the defendant remain detained pending the appeal." Doc. No. 86 at 4. The Government is wrong. Far from requiring the Court to keep Mr. Quiroz detained, the Bail Reform Act explains that the Court lacks such authority once the Indictment is dismissed.

Section 3142, which the Government argues applies, by its own terms provides that a detention or release order shall issue upon the appearance of a "person charged with an offense[.]" 18 U.S.C. § 3142(a). Mr. Quiroz is no longer charged with an offense, and therefore cannot be detained pursuant to § 3142. *See, e.g., Unites States v. Arteaga-Centeno*, 360 F. Supp. 3d 1022, 1023-25 (N.D. Cal. 2019). As the court explained in *Arteaga-Centeno*, "once this Court granted Defendant's Motion to Dismiss, there was no 'charged offense' on which the Court could order him detained." *Id.* at 1024 (cleaned up). Every court to specifically consider this issue has found the same. *See, e.g.*, *United States v. Hudson*, 3 F. Supp. 3d 772, 790 (C.D. Cal.), *rev'd and remanded on other grounds sub nom. United States v. Dunlap*, 593 F. App'x 619 (9th Cir. 2014); *United States v. Sales*, No. 2:13-cr-137, 2014 WL 3728364 at *3-4 (D. Me. July 25, 2014).[2]

---

[1] The Government implies that *it* has the power to supersede the Court's Dismissal Order simply by filing an appeal, under § 3731. The Government does not explain how a mechanism under the Government's exclusive control—i.e., an appeal—could plausibly resurrect a defunct detention order or otherwise overrule a decision by an Article III Judge.

[2] The limited caselaw in this area is evidence of just how radical the Government's position is. The Government offers without serious explanation that these "decisions not only contravene the plain statutory text but are also legally incorrect." Doc. No. 86 at 7.

To counsel's knowledge, no court has ever taken the Government's extreme position. Rather, the Government points to wholly inapposite cases in support of its claim that detention orders remain intact after an entire case is dismissed and mandate continued detention. *See* Doc. No. 86 at 4-5. For example, in *United States v. Davis*, 793 F.3d 712 (7th Cir. 2015), the court considered whether it had jurisdiction to hear an appeal under § 3731, after the government refused to comply with a discovery order, and the district court dismissed the case with prejudice at the government's request to enable an appeal. The court did not address whether the defendants could be detained pending appeal. Nevertheless, the Government presents, as holding, a footnote from a dissenting opinion, which says only that § 3143(c) requires courts to "treat the defendant as if the case were still active and apply the criteria set forth in 18 U.S.C. § 3142." 793 F.3d at 729 n.5 (Rovner, J., dissenting). Of course, this Court is not bound by a Seventh Circuit opinion, let alone a footnote in a dissent. Moreover, it is not clear that the language even takes a position on the question of whether § 3142 can still be applied in the absence of any criminal charges, as discussed above.

The other case cited by the Government is equally unavailing. In *United States v. Workman*, 680 F. App'x 699, 701-02 (10th Cir. 2017), the court simply said when "the government takes an appeal from a suppression order, we generally treat the defendant as we would a pretrial defendant." But, a court's suppression of evidence is fundamentally different from the dismissal of an indictment. In *Workman*, the indictment had not been dismissed, and the government's appeal was interlocutory. The ongoing detention, therefore, did not suffer from the clear infirmities inherent when there is no longer an indictment. The Government's cited cases do not support its position.[3]

---

[3] Elsewhere in its brief, the Government cites to similarly inapposite opinions. *See* Doc. No. 86 at 7. *United States v. Maul-Valverde*, 10 F.3d 544 (8th Cir. 1993), involved Sentencing Guidelines questions on appeal,

The Government otherwise attempts to twist the language of § 3143(c) to fit its own view of the law. It argues that the phrase, "otherwise subject to a release or detention order," includes the pretrial detention order that was vacated by the dismissal of this case. No court has taken the Government's position; it is a conclusory and an entirely unnatural reading of the statute. And, it ignores the common sense conclusion that if the Court lacks the authority to order detention in the absence of an indictment, *see Arteaga-Centeno*, 360 F. Supp. 3d at 1024, any previously imposed detention order by the magistrate judge is similarly without force or authority.

The Government also points to historical changes in § 3731, which removed language it claims previously required release of a defendant pending a government appeal. *See* Doc. No. 86 at 7 (citing Pub L. No. 99-646, 100 Stat. 3592, Sec. 32 (1986)). It posits that this means Congress rejected such a policy. The Government is not candid with the Court. In fact, the stricken language said: "Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released *in accordance with chapter 207 of this title*." 18 U.S.C. § 3731 (1982) *amended by* Pub. L. No. 99-646. As Congress explained, such language was stricken because the cross reference to chapter 207—i.e., §§ 3141-3156—was superfluous. *See* H.R. REP. 99-797, 23, 1986 U.S.C.C.A.N. 6138, 6146. In fact, the title of the section cited by the Government is "SEC. 32. ELIMINATION OF SUPERFLUOUS CROSS-REFERENCE." *See* Pub. L. No. 99-646. The

---

and does not address the scope of detention power on appeal. Rather, in a footnote, it notes that his sentence had already concluded, and the court had "ordered him detained pending resolution of the government's motion to detain him during this appeal." *Id*. at 547 n.2. This is not a substantive decision on the detention question and, more importantly, says nothing about the question of detention in the absence of any criminal charges. In *United States v. Woodruff*, 941 F. Supp. 910 (N.D. Cal. 1996), *vacated*, 122 F.3d 1185 (9th Cir. 1997), the court granted a Rule 29 motion for acquittal on Hobbs Act robbery charges, but granted the government's motion to detain the defendant pending its appeal. Putting aside the differences between Rule 29 acquittal and dismissal of an indictment, the court did not address its authority to detain a person after acquittal, but preceded directly to its detention analysis under § 3142. *See id*. at 928-30. Moreover, as discussed above, a court in the same district has since addressed the precise question at issue and said that the absence of an indictment precludes a detention order. *See Arteaga-Centeno*, 680 F. Supp. 3d at 1024.

logical inference is precisely the opposite of what the Government says. Far from abandoning the presumption of release pending appeal, Congress acknowledged that such language was superfluous. The more logical reading is that the language was superfluous because § 3143 already made clear § 3142 applied in the case of § 3731. And § 3142(a) also makes clear that only those charged with an offense can be detained. Other Government arguments, such as that "dismissal of an indictment should not be deemed final until it is affirmed on appeal" because a *conviction* is not final until affirmed on appeal, lack any citation or support and are contrary to the reasoned opinions by other courts. *See* Doc. No. 86 at 7-8; *Arteaga-Centeno*, 360 F. Supp. 3d at 1024 (discussing cases).

The Government's reasoning suffers from a similar defect to its substantive argument in favor of § 922(n)'s constitutionality. It treats legal and constitutional truisms as mere semantics. It makes no constitutional distinction between a felon and an indictee, just as it now makes no distinction between a person under indictment and one who is not under indictment. The Government refuses to accord any legal significance to these fundamental components of the criminal process—i.e., indictment and conviction. Such an erroneous view of the law should not result in Mr. Quiroz's further detention. Mr. Quiroz's current and ongoing detention is without authority, and he must be released immediately.

> 2. <u>Even if there was authority to further detain Mr. Quiroz, detention is unwarranted.</u>

The Government further argues that, even if the Court conducted a new detention analysis under § 3142, the factors would support is continued detention. Doc. No. 86 at 6. It is wrong. It refuses to acknowledge the considerable change in circumstances brough about by the dismissal of Mr. Quiroz's indictment, and instead repeats the arguments it raised in the original detention hearing. *See* Doc. Nos. 11, 12. The Government even refers to Mr. Quiroz's "charged crime," despite the charges having been dismissed. *See* Doc. No. 86 at 6. Mr. Quiroz renews but does not

think it necessary to repeat his arguments from the initial detention proceedings. Rather, the Court should consider the current posture of this case and find that the Government cannot meet its burden to show that Mr. Quiroz should be further detained.

The Bail Reform Act directs that a judicial officer "*shall* order the pretrial release" of the defendant "subject to the *least restrictive* further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(c)(1)(B) (emphasis added); *United States v. Holloway*, 781 F.2d 124, 125 (8th Cir. 1986) ("Pretrial detention is to be the exception rather than the rule."). To justify an order of detention, the Government must establish by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f)(2); *see also Fortna*, 769 F.2d at 250 (requiring clear and convincing evidence of dangerousness). In the alternative, to justify detention based on a defendant's risk of flight the Government must establish by a preponderance of the evidence that no conditions or combination of conditions will reasonably assure appearance. *Fortna*, 769 F.2d at 250. "[T]he standard is reasonably assure appearance, not 'guarantee' appearance, and . . . detention can be ordered on this ground only if no condition or combination of conditions will reasonably assure the appearance." *Id.* (internal quotation marks omitted). In "determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" the Court must consider factors including: the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community if released. 18 U.S.C. § 3142(g).[4]

---

[4] The U.S. Code explains that when a defendant seeks release pending his or her own appeal of a conviction, that he or she must meet the requirements of § 3142 and, additionally, that the appeal is likely to result in

The Bail Reform Act anticipates that the court will alter its prior detention orders based on new circumstances and further states that a person can be released by subsequent order if "the judicial officer determines such release to be necessary…for another compelling reason." 18 U.S.C. §§ 3142(f)(2)(B), (i)(1)(B). Even if the § 3142(g) factors supported Mr. Quiroz's pretrial detention in April 2022, they do not today. In the detention order, the magistrate judge explained the "evidence and punishment range against the Defendant are substantial." *See* Doc. No. 13 at 1. The Court also took judicial notice of Mr. Quiroz' substance abuse, criminal history, and prior failure to appear, and determined that Mr. Quiroz posed a flight risk and potential danger to the community. *See id*. Much of the reasoning is clearly undermined by the dismissal of Mr. Quiroz's charges and his having been detained for over six months on what have since been found to be unconstitutional charges.

Mr. Quiroz has been in continuous detention since his arrest on March 17, 2022, a period over six months. The post-conviction PSIR prepared in this case by the United States Probation Office indicates that Mr. Quiroz's advisory Sentencing Guidelines range would have been 10-16 months based on a Criminal History Category of I and an Offense level of 12, without acceptance of responsibility. At the outset, Mr. Quiroz's Criminal History Category of I calls into question the Government's assertions that Mr. Quiroz "has an extensive criminal history" or that his "lack of respect [for] the rule of law and his choice to willingly violate state and federal statutes highlight[ ] the danger he poses to others and to the community . . ." *See* Doc. No. 86 at 6. Additionally, Mr. Quiroz would have raised a credible argument for acceptance of responsibility,

---

reversal, a new trial, a non-carceral sentence, or reduced sentence. *See* 18 U.S.C. § 3142(b). That § 3143(c) imposes no such explicit burden on the Government to detain a defendant pending Government appeal, is further evidence that the statute does not anticipate detention during an appeal of a dismissal of all charges. Insofar as the Court finds further detention is authorized, however, Mr. Quiroz respectfully offers that the Government must make a similar showing that it is likely to succeed in reversing this Court's Dismissal Order.

and the proper Guidelines range would be 6-12 months.[5]

Mr. Quiroz has already been detained—on unconstitutional charges—for a period longer than the bottom of his correctly calculated Sentencing Guidelines range. He should therefore be released immediately, as any interest the Government has in continuing its unconstitutional detention of Mr. Quiroz is assuredly de minimis once it exceeds the expected sentence he would receive. Moreover, the Government's appeal under the new *Bruen* framework, will likely take longer than an ordinary appeal. The novel issue could merit a petition for certiorari to the Supreme Court depending on Fifth Circuit's decision. It is a near certainty that the time of the appeal will leave Mr. Quiroz's continued detention in excess of the top of the Guidelines range, either with or without acceptance of responsibility. If Mr. Quiroz had lost his Second Amendment challenge, he would likely be sentenced and released more promptly than he will be if he is detained pending the Government's appeal. He cannot be detained as punishment, and certainly not for succeeding in dismissing his case. *Cf. generally United States v. Salerno*, 481 U.S. 739 (1987) (noting throughout that the permissible purpose of pretrial detention under the Bail Reform Act is regulatory, not punishment).

There is no authority to continue detaining Mr. Quiroz following dismissal of his Indictment, but the Government also cannot meet its burden to show that he should be further detained under § 3142.

---

[5] Even absent the Court's Memorandum Order dismissing the indictment, Mr. Quiroz would have objected to the PSIR's failure to make the acceptance adjustment. Mr. Quiroz exercised his fundamental trial right in order to challenge the constitutionality of the statutes of conviction. *See* Doc. No. 23. The Government would not permit or offer a conditional plea in this case, necessitating a trial to preserve and vindicate the constitutional right. The United States Sentencing Guidelines allows for the acceptance adjustment to be made in this circumstance. *See* U.S.S.G. § 3E1.1, Application Note 2. Post-conviction, this Court agreed with the Mr. Quiroz's position regarding the constitutionality of the statute, strongly indicating that Mr. Quiroz should receive acceptance.

**B.  The Court Should Not Stay its Dismissal Order.**

The Government argues, in the alternative, that the Court should stay its dismissal order pending its appeal. Doc. No. 86 at 8-14. The Court should deny the request.

At the outset, the Court likely lacks jurisdiction to stay the dismissal order, because the Government already filed its Notice of Appeal. *See* Doc. No. 83. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *See United States v. Lucero*, 755 F. App'x 384, 386 (5th Cir. 2018) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *see also United States v. Hitchman*, 587 F.2d 1357, 1359 (5th Cir. 1979). The Government cites limited authority for the position that it can both seek a stay of a dismissal order and rely on that dismissal order as the basis for its appeal under 18 U.S.C. § 3731.[6] The Government cannot have it both ways. If it wants the Indictment to remain in place, there is no final Dismissal Order to appeal. If it wants to appeal the Dismissal Order, there is no Indictment to secure Mr. Quiroz's further detention.

Even if the Court determines it can stay its Dismissal Order, it should not. The Government fails to meet the burden it describes, which requires consideration of:

> (1) whether the stay applicant has made a strong showing that he is likely
> to succeed on the merits; (2) whether the applicant will be irreparably
> injured absent a stay; (3) whether issuance of the stay will substantially

---

[6] The Government's citation to *United States v. Alfonso*, 142 F.3d 772, 775 (2d Cir. 1998), for the proposition that a dismissal can be stayed pending appeal, is incorrect. Doc. No. 86 at 8. *Alfonso* said no such thing. It noted that the district court had stayed execution of a release order, precisely because the stay of the dismissal order had to be brought before the circuit court. *Id.* The Government also cites *United States v. Armstrong*, 48 F.3d 1508, 1512 (9th Cir. 1995), *rev'd on other grounds*, 517 U.S. 456 (1996). Though arguably more relevant, *Armstrong* notes only that the district court had stayed execution of a dismissal order pending appeal, without addressing whether the district court had that power or whether the court had issued the stay *before* the notice of appeal was filed. In fact, the stay *was* ordered before the notice of appeal was filed. *See United States v. Armstrong*, 2:92-cr-336, Doc. No. 150 (C.D. Cal. Jan. 5, 1993), Doc. No. 158 (C.D. Cal. Jan. 20, 1994).

> injure the other parties interested in the proceeding; and (4) where the public
> interest lies.

*See E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (citations omitted). The Fifth Circuit has

explained that a stay is an "extraordinary remedy[.]" *Texas v. United States*, 40 F.4th 205, 215 (5th

Cir. 2022). The Government fails on each step to show that the Court should impose this

extraordinary remedy.

1. <u>The Government has not shown a likelihood of success on the merits</u>.

The Government must make a "strong showing" that it is likely to succeed on the merits

of its appeal, not a "mere possibility of relief." *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297,

300 (5th Cir. 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

The Government's likelihood of success on the merits is belied by its limited understanding

of *Bruen*, a fact acknowledged repeatedly in this Court's Dismissal Order. The Government's

insistence that it will succeed in reversing this Court's Dismissal Order is dubious, and a brief

discussion of the substance of this Court's order and its characterizations of the Government's

arguments is warranted.

In a 25-page opinion, the Court thoroughly addressed the text of the Second Amendment

and the relevant historical traditions of firearms restrictions as required by *Bruen*. It found, first,

that receipt of a firearm is protected by the plain text of the Second Amendment. *Id*. at 5-7. The

Court noted that the Government's attempt to exclude indictees from the "people" protected by

the Second Amendment "seems to misread *Bruen*" and "conflates *Bruen*'s first step with its

second." *Id.* at 5-6. It also explained that the Government's position that the Second Amendment

only protects *possession* and not *receipt* of a firearm "makes little sense," and would "lead to an

absurd result." *Id*. at 7.

The Court also concluded that the Government failed to meet its burden on the second part of the framework. *Id*. at 9-20. In an extensive historical survey that exceeded even that briefed by the parties, the Court found no historical justification for disarming those under indictment. *Id*. at 9-13. The Court rejected the Government's reliance on § 922(g)(1) as an historical analogue for § 922(n), because: 1) a shared history does not make § 922(n) constitutional, 2) the Government merely presumes the constitutionality of § 922(g)(1) based on dicta from *Heller*, and 3) the Government failed to conduct an actual historical analysis as required by *Bruen*. *Id*. at 9-10. The Court also reasoned that the Government's use of 19th century surety laws as historical analogues for § 922(n) was inconsistent with *Bruen*, in part because *Bruen* itself called into question the reliability of these laws, and also because under *Bruen* their existence, if anything, demonstrated that the Nation historically addressed this problem by materially different means. *Id*. at 14-15. The Court provided additional constitutional and policy reasons for doubting the constitutionality of § 922(n). *Id*. at 20-25

The Government attempts to characterize this Court's ruling as an outlier that rejects a judicial consensus that § 922(n) remains constitutional following *Bruen*. That is simply untrue. The Government asserts "this Court's dismissal order parts with the otherwise unanimous and growing consensus of federal courts that have considered post-*Bruen* Second Amendment challenges to federal criminal statutes." Doc. No. 86 at 12. The Government ignores the simple fact that different statutes are different statutes. With the exception of one opinion discussed below, each of the Government's cited cases involve statutes other than § 922(n), and the majority address § 922(g)(1). *See* Doc. No. 86 at 12. The only way to understand these opinions as inconsistent with this Court's is to believe that there is no meaningful distinction between felons and indictees under the Constitution. The Government belabors this point, throughout its Motion, again arguing that

dicta from *Heller* relating to longstanding prohibitions on firearms for felons is not only binding precedent, but somehow applies to those under indictment as well. *See* Doc. No. 86 at 10-11. This Court clearly and correctly rejected that position by the Government, as well as any efforts to equate an indictment with a felony conviction for these purposes. *See* Doc. No. 82 at 9-11, 19-22.

The only other case to address § 922(n) following *Bruen* is *United States v. Kays*, No. 5:22-cr-0040, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022)). While it found the § 922(n) did not violate the Second Amendment, this Court already received briefing on the opinion prior to its Dismissal Order. *See* Doc. Nos. 79, 80. Moreover, as explained in Mr. Quiroz's briefing, the *Kays* court similarly rejected nearly every argument raised by the Government now, and similarly pointed out its misunderstanding of the *Bruen* framework. *See* Doc. No. 80. The only place where the court agreed with the Government was in its finding that 19th century surety statutes were sufficient to establish an historical tradition. *See Kays*, 2022 WL 3718519, at *4-5. This Court, however, already explained with the benefit of the parties' briefing on *Kays*, that reliance on these surety statutes was misplaced, and contrary to the express language of *Bruen*. Doc. No. 82 at 14-15.

The Government's dependence on repeated arguments from its briefing and a single contrary opinion from a district court in another circuit, which was already considered by this Court, is insufficient to satisfy the required "strong showing" that it is likely to succeed on its appeal. *See Burgess*, 871 F.3d at 300. The Government's "inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay." *See Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019).

2. <u>The Government faces no irreparable harm if the Court declines to order the stay.</u>

The Government also argues that it will be "irreparably harmed absent a stay." The position is meritless. The Government asserts that if the Court fails to stay the dismissal, and Mr. Quiroz is released, he may never be found again, and the Government will not be able to vindicate its interest in prosecuting and incarcerating him. Doc. No. 86 at 12. As discussed above, any asserted harm is thoroughly undermined by the fact that Mr. Quiroz has already been detained for over six months, based on an unconstitutional charge. That detention already approaches, if not exceeds, the sentence he would receive in this case. But the Government insists, counterintuitively, that because Mr. Quiroz prevailed on his motion to dismiss, the Court should order that he be incarcerated likely well in excess of the Sentencing Guidelines range, while the Government appeals this case over the upcoming months or longer. This extreme position raises the question whether the harm the Government actually fears is that, absent Mr. Quiroz's detention, future criminal defendants will not be adequately intimidated into abandoning their rights to bring constitutional challenges in criminal cases. The Government has not demonstrated irreparable harm.

3. <u>Mr. Quiroz will, of course, be substantially injured by the imposition of this stay, and the public interest does not support it either.</u>

In perhaps the most chilling portion of its motion, the Government argues that the stay will not "substantially injure" Mr. Quiroz because he is no different from any other "defendants who have not yet been convicted[.]" Doc. No. 86 at 12-13. The Government is wrong.

Mr. Quiroz is currently unlawfully detained. That is a harm. Sitting indefinitely in a jail cell, particularly for an unconstitutional charge, is the among the most egregious harms imaginable. "To a prisoner, this prospect of additional time behind bars is not some theoretical or mathematical concept. Any amount of actual jail time is significant and has exceptionally severe consequences for the incarcerated individual an] for society which bears the direct and indirect

costs of incarceration." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (cleaned up); *cf. Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977) ("While the contours of this historic liberty interest in the context of our federal system of government have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment. It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law.") (cleaned up).

The Government further argues that any harm to Mr. Quiroz is minimized because the appeal may be resolved by another case pending before the Fifth Circuit, *United States v. Avila*, No. 22-50088 (5th Cir. 2022), which is tentatively scheduled for oral argument in December of 2022. *See* Doc. No. 86 at 1, 4, 13. This argument is misleading. First, it ignores that December is three months away, that any decision would likely be at least several months longer, and that the appellate process could involve further actions like a cert petition to the Supreme Court; all while Mr. Quiroz sits in jail without so much as an indictment keeping him there. Second, and more importantly, the Government's position is inconsistent with its own argument in *Avila*. Mr. Avila was convicted under § 922(n) long before *Bruen* and was unable to raise the same argument before the district court. As a result, his argument on appeal that § 922(n) violates the Second Amendment is subject to plain error review. The Government's stated position in that briefing is that the Fifth Circuit should not reach the merits of the Second Amendment challenge, because the absence of existing direct precedent precludes it under plain error. *See generally* Appellee Brief, *United States v. Avila*, No. 22-50088 (5th Cir. Aug. 25, 2022). That would mean the Government now misleadingly omits its own position in *Avila*, to suit its present argument that Avila's outcome will resolve the present case as well. If the Government's argument in *Avila* prevails, the Fifth Circuit would not even address the merits of the *Bruen* challenge in *Avila*.

The Government's additional arguments that the public interest support continued detention suffer from the same infirmities as its earlier arguments: the public does not have an interest in detaining a person for a period longer than any likely sentence, particularly where the Court has already found that his conviction would be unconstitutional.

Even if this Court has the power to issue the requested stay, the Government has failed to meet its burden for such extraordinary relief. *See E.T.*, 19 F.4th at 764.

## CONCLUSION

For the foregoing reasons, this Court should deny the Government's Motion to Detain.


Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender


/S/
CHRIS CARLIN
Supervisory Assistant Federal Public Defender
Western District of Texas
108 N. 10th Street
Alpine, Texas 79830
(432) 837-5598
(432) 837-9023 – fax
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of September, 2022, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following:

AUSAs Matthew Ellis and Scott Greenbaum
United States Attorney's Office
2500 North Hwy, 118 Suite A200
Alpine, Texas 79820

/s/ Chris Carlin_____
CHRIS CARLIN
Supervisory Assistant Federal Public Defender
Western District of Texas
108 N. 10th Street
Alpine, Texas 79830
(432) 837-5598
(432) 837-9023 (Fax)
*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **4:22-CR-00104-DC** |
| | § | |
| | § | |
| **JOSE GOMEZ QUIROZ** | § | |

## O R D E R

It is hereby ORDERED, in light of this Court's dismissal of all charges against the Defendant in the above cause number, that the Defendant be immediately **RELEASED** from custody.

SIGNED AND ENTERED this _____ day of _____ , 20__.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE