## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **v.** | § | **P:22-CR-00104-DC** |
| **(1) JOSE GOMEZ QUIROZ.** | § | |

### ORDER DENYING GOVERNMENT'S MOTION

Jose Gomez Quiroz ("Defendant") was tried and convicted in June 2022 of two counts: (Count 1) making a false statement during the purchase of a firearm under 18 U.S.C. § 922(a)(6), and (Count 2) the illegal receipt of a firearm by a person under indictment under 18 U.S.C. § 922(n). One week after his conviction, Defendant moved to set aside the verdict pursuant to Rule 29 of the Federal Rules of Criminal Procedure and for this Court to reconsider his previous motion to dismiss because of the United States Supreme Court's recent ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*.[1]

The Court granted Defendant's Motion for Reconsideration and held § 922(n) was unconstitutional.[2] As a result, the Court dismissed the entire indictment on September 19. The Government appealed the Court's order the same day, and two days later, Government filed the motion currently before the Court.[3]

The Government's motion requests Defendant remain detained pending appeal. Or, in the alternative, the Government asks this Court to stay the order dismissing Defendant's indictment. For the reasons explained below, the Court **DENIES** both requests.

---

[1] Doc. 73.
[2] Doc. 82.
[3] Docs. 83, 86.

## DISCUSSION

### I.    Government's Motion to keep Defendant detained pending appeal.

When the Government appeals an order, 18 U.S.C. § 3143 states that the judicial officer shall release or detain the person under 18 U.S.C. § 3142. Section 3142's plain language covers those "charged with an offense."[4] Defendant here, however, is not charged with any offense—the Court's order dismissed the indictment.

The Government argues that even though Defendant is not charged with any federal offense, Defendant should remain detained for two main reasons. First, the Government claims that Defendant remains subject to this Court's original detention order. And second, dismissal of Defendant's indictment did not automatically trigger his release.

### A.  Is the original detention order still in effect?

The Government cites no authority to support its assertion that Defendant's original detention order remains in effect. What little the Government does cite is about issues not relevant here. For example, the Government cites a footnote from a Seventh Circuit dissent (failing to correctly cite it as a dissenting opinion) that states: "[f]or purposes of pretrial release, when the government takes an appeal pursuant to section 3731, 18 U.S.C. § 3143(c) requires the district court to treat the defendant as if the case were still active and apply the criteria set forth in 18 U.S.C. § 3142."[5] While that statement is true pretrial and when the case is "active," it does not support Government's claim that Defendant must remain detained without any federal charge pending.

---

[4] 18 U.S.C. § 3142(a).
[5] Doc. 86 at 4 (quoting *United States v. Davis*, 793 F.3d 712, 729 n.5 (7th Cir. 2015) (Rovner, J., dissenting)).

Defendant cites the scant authority there is on the issue.[6] The most recent case cited is a district court case from California facing issues similar to the issues in this case. There, the district court found that it could not keep the defendant detained if there were no charges against him.[7] The other cases Defendant cites are more of the same.[8] The Court finds no reason to hold differently. Without authority demonstrating otherwise, the Government's argument that this Court has the authority to keep Defendant detained has no foundation.

### B. Is the Court required to keep Defendant detained?

With no authority suggesting the original detention order is still in effect, the Government argues that this Court's dismissal order did not "automatically" trigger Defendant's release. Rather, the Government asserts this Court "must" treat Defendant the same way it treats all defendants pending trial by analyzing release or detention "in accordance with section 3142."[9] To bolster that argument, the Government claims that Congress rejected that policy by "[*deleting*] a provision that had formerly required a defendant's release pending a government appeal."[10] Yet the Government avoids the fact that Congress's deletion was not a rejection but done because the stricken language was a

---

[6] Doc. 87 at 6.

[7] *United States v. Arteaga-Centeno*, 360 F. Supp. 3d 1022, 1024 (N.D. Cal. 2019).

[8] Doc. 87 at 6 (citing *United States v. Hudson*, 3 F. Supp. 3d 772, 790 (C.D. Cal.), *rev'd and remanded on other grounds sub nom. United States v. Dunlap*, 593 F. App'x 619 (9th Cir. 2014); *United States v. Sales*, No. 2:13-cr-137, 2014 WL 3728364 at *3-4 (D. Me. July 25, 2014)).

[9] Doc. 86 at 7 (citing 18 U.S.C. § 3143(c)).

[10] *Id.*

superfluous cross-reference. Indeed, the name of the title the Government cites to support its claim is "Elimination of Superfluous Cross-reference."[11]

The Government cites no controlling authority explaining why Defendant should remained detained following this Court's dismissal of the indictment. The statute's plain text covers those "charged with an offense." Defendant has no federal charges pending against him—and without authority to the contrary—there is nothing that requires the Court to keep Defendant detained. Thus, the Court will not stay Defendant's release pending appeal.

## II.    Government's motion to stay dismissal pending appeal.

The Government requests in the alternative that the Court stay its order dismissing Defendant's indictment pending appeal because it has a "sufficient likelihood of success on the merits." But *Bruen*'s framework now requires the Government to prove a challenged regulation is consistent with the historical tradition of firearm regulation. And as the Court noted in its dismissal order, the Government failed to analyze almost all history pre-1938.[12] So because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*," the Government failed to defend § 922(n) on the historical grounds required by the Supreme Court.[13]

The Government also argues that this Court diverges from the "otherwise unanimous and growing consensus of federal courts that have considered post-*Bruen* Second Amendment challenges" by citing 14 cases post-*Bruen* where firearm regulations were

---

[11] Pub. L. No. 99-646, 100 Stat. 3592, Sec. 32 (1986) (like the failure to identify a supposed holding as a dissenting opinion, the Court believes the Government's omission was merely an oversight).

[12] Doc. 82 at 10.

[13] *Id.* (quoting *D.C. v. Heller*, 554 U.S. 570, 634–635 (2008)).

upheld.[14] However, only one of the 14 cases cited involved § 922(n): *United States v. Kays*.[15] The Court was aware of *Kays* when it was released and respectfully notes several deficiencies in that court's analysis.

First, although the *Kays* court did conclude § 922(n) is constitutional, it effectively punted its analysis to higher courts in its conclusion. Indeed, the court said that § 922(n)'s constitutionality "remains unclear" and "Defendant has preserved this issue for future decision by higher courts."[16]

Second, the *Kays* court says § 922(n) is perhaps less restrictive than Massachusetts surety statutes because § 922(n) doesn't prevent the accused from carrying, only receipt.[17] But out of the three constitutionally protected actions—possessing, carrying, or receipt— Massachusetts' surety statutes did not prevent the accused from doing any of the three. In contrast, § 922(n) does prevent one of the three—receipt. So this Court would respectfully question how § 922(n), which prohibits one type of constitutionally protected conduct, is less restrictive than a surety statute—which prohibits none.

Third, the *Kays* court does not provide any historical analogies besides surety statutes. The court's brief analysis does no more than state that one historical analogue—that was less restrictive than § 922(n) and rejected by Justice Thomas in *Bruen*— "is sufficient to satisfy [the government's] burden to justify the firearm regulation."[18] No colonial history, no Federal Firearms Act history, no history on "who" can be categorically restricted. Not even

---

[14] Doc. 86 at 10.
[15] No. CR-22-40-D, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022) (the Court would point out that the Government does not mention that the *Kays* court found—like this Court—the conduct of receipt is covered by the Second Amendment's plain text).
[16] *Id.* at *5.
[17] *Id.*
[18] *Id.*

one mention of now-Justice Barrett's dissent in *Kanter v. Barr*.[19] Therefore, it is doubtful that the *Kays* court's analysis is sufficient to declare that § 922(n) has a historical tradition in this Nation.

**The harm if Defendant remains detained.**

The Court highlighted due process concerns when dismissing Defendant's indictment. The same alarm bells ring loudly when the Government argues for indefinite detainment of someone who (1) has no federal charges pending against him and (2) has already been detained longer than the low end of his Sentencing Guideline range.[20] The Government implausibly argues, however, that keeping Defendant detained will not substantially injure him.[21] Likewise, the Government argues that Defendant is a flight risk and a danger to the public.[22] But for how long an indefinite detention does that argument support? The Government's answer is unconvincing.

Defendant has already been detained for six months. The Government counters that any injury caused by keeping Defendant detained is minimized because the questions here will be handled in December by the Fifth Circuit.[23] Indeed, "the government anticipates that the Fifth Circuit's decision in *Avila* will ultimately control here."[24] But as Defendant points out, the Government "misleadingly omits its own position in *Avila*."[25]

---

[19] 919 F.3d 437 (7th Cir. 2019) (Barrett, J. dissenting).
[20] Doc. 87 at 12.
[21] Doc. 86 at 12.
[22] Doc. 86 at 6.
[23] *Id.* at 1 (citing *United States v. Avila*, No. 22-50088 (5th Cir. Sept. 14, 2022)).
[24] *Id.*
[25] Doc. 87 at 18.

If the Government's stated argument in *Avila* is successful, it would effectively prevent the Fifth Circuit from reaching the merits of this case.[26] So although the Government claims that December is only a few months away, the time Defendant could remain detained is substantially longer because of the Government's argument.

## CONCLUSION

The Government provides no compelling or mandatory authority that persuades, or would obligate, this Court to keep Defendant detained. Without justification, Defendant's rights should not be violated by indefinitely detaining him when there are no federal charges against him. Thus, the Government's motion to keep Defendant detained or stay the Court's dismissal order pending its appeal is **DENIED**.

It is therefore **ORDERED** that the Government's Motion for Detention Pending Appeal or to Stay Dismissal Pending Appeal is **DENIED**. (Doc. 86).

It is also **ORDERED** that Defendant be released.

It is so **ORDERED**.

SIGNED this 26th day of September, 2022.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE

---

[26] *Id.*